GLADDIN GORIN et al. *v.* GEORGE H. GORDON et al.

1. HUSBAND AND WIFE: MARRIAGE SETTLEMENT FAVORED.—Antenuptial settlements, when fairly made, are favored by the courts, not only on account of the security thereby provided for the wife, but because a provision for the issue of the marriage is usually the great and immediate object in view; and therefore,

the most favorable exposition will be made of the words of such instruments, to support the intention of the parties, especially where they refer to a provision for the children.

2. SAME: HOW MARRIAGE SETTLEMENTS CONSTRUED.—In construing a marriage settlement, courts will not hold a naked power of appointment, of a special and limited character, reserved to the settler, to be a power coupled with an interest, or a power of revocation, so as to enable him to defeat a provision for the children, if any other construction can be adopted consistently with the terms of the instrument.

3. SAME: SAME: NAKED POWER WILL NOT ENLARGE AN ESTATE INTO A FEE: HOW ESTATE WILL GO, WHEN POWER NOT EXECUTED.—Where it is apparent from the terms of a marriage settlement, that the issue of the marriage should take the whole of the remainder, after the death of the parents, a power reserved to the settler to apportion it, by will, among them, will not enlarge his estate into a fee: and in such a case, if the power is not executed, the children will take equally.

APPEAL from the Chancery Court of Wilkinson county.   Hon. Stanhope Posey, chancellor.

This was a bill filed by the children of Hugh W. Wormly and Mary Wormly, his wife, to recover possession of certain slaves, which they claim under an antenuptial settlement, executed between their parents and a trustee.   The bill shows, that the settlement was executed in the year 1807; and that the property conveyed in it by said Hugh Wormly, was a vested remainder, which he then owned in certain property, which had theretofore been settled by his father, to the use of his mother during their joint lives, and afterwards to their children; and that, in the year 1811, the said property came to the possession of the said Hugh, in pursuance of said settlement.

The marriage settlement, between Hugh W. Wormly the father, and Mary Strode (afterwards Wormly) the mother, of complainants, recites the settlement made by the father of said Hugh, and the interest of said Hugh in the property thereby conveyed, and that a marriage was then intended shortly to be solemnized between said Hugh and said Mary, and that in consideration thereof and of ten shillings, that the conveyance was made; and then proceeds, as set out in the opinion of the court.

The bill charges, that in the lifetime of complainants' mother

(who died in 1848), that their said father sold certain of the slaves, conveyed in the marriage settlement, to each of the defendants, and that the defendants purchased with full notice of complainants' rights. It also states, that Hugh W. Wormly died intestate, in 1856. The suit was commenced in 1857.

A demurrer to this bill was sustained by the chancellor, and the bill dismissed, and the complainants appealed.

*W. P. Harris,* for appellants.

1. In marriage settlements, the issue of the marriage are the principal objects to be provided for; and the courts favor such a construction of them, as will protect their rights, and hence, unless the contrary intention clearly appear, the children are considered as purchasers. 1 Preston Estates, 387–91–92; Fearne on Rem. 313; *Sisson* v. *Seabury,* 1 Sumner, 235; 4 Kent Com. 231 (note); *Vaughan* v. *Marquis of Hereford,* 10 Sim. 639.

2. The power reserved to the settler, to divide the property, among the issue of the marriage, by will, does not enlarge his life estate; nor is it necessary that it should be executed, in order to entitle the issue to take. The power is a mere authority to apportion the property among the beneficiaries mentioned in the deed. 2 Russ. & Mylne R. 78; *Payne* v. *Franklin,* 5 Sim. 458.

3. The life interest which Hugh Wormly took, was a mere equity,—the legal fee still remained in the trustee, until said Hugh's death. The trustee was charged with executing conveyances to the children after their possession became vested, and this, particularly in a marriage settlement, will continue the legal title in him. Hill on Trustees, 242; 2 Jarman on Wills, 203.

*Carnot Posey,* for appellees.

1. The instrument under which complainants claim, is merely executory; and in such cases, the provisions are subject to be moulded according to the intention of the parties, and under this rule the children could not take without a further conveyance. 2 Tuck. Blackstone, 441.

2. The power to appoint by will, how the children should take, gave a fee to Wormly, and his sale to defendants was therefore good.

*J. Winchester*, on same side,

Insisted, that if it were conceded, that any interest was vested in complainants, in the slaves in controversy, and that their father took only a life estate, that then said life estate was forfeited by the fraudulent sale of the property in fee, as charged in the bill. This sale took place before 1848, and in that year the mother of complainants died, and upon her death subsequent to the fraudulent sale and forfeiture, a right of action accrued to complainants, and having failed to bring this suit within three years thereafter, they were barred by limitation. He also contended, that the settlement under which complainants claim was merely executory, and vested no interest in them; and that at all events the unexecuted power of appointment by will, reserved to the settler, left complainants only one source of title, viz., by descent; and if they are forced to rely on that, they are bound by the sale of their ancestor.

HARRIS, J., delivered the opinion of the court.

The only question presented by the assignment of error here, arises out of the construction of the deed between Hugh W. Wormly, Mary Strode, and Thomas Strode, trustee, under which complainants in this bill claim to derive their title to the slaves in controversy. A demurrer was filed to the bill in the court below, which was sustained, and the bill dismissed.

The deed, so far as the same is material to be considered, is as follows: " He, the said Hugh Wallace Wormly, has bargained, sold, aliened, and confirmed, and by these presents, doth bargain, sell, alien, and convey, and confirm, unto the said Thomas Strode, his heirs and assigns, all the above-mentioned estate, real and personal, and every part and parcel thereof, wheresoever it may lay, or howsoever it may be circumstanced. Provided always, and nevertheless, to such uses and upon such trusts, and to and for such interests and purposes, as is hereinafter mentioned, expressed, and declared of and concerning the same, that is to say, in case the said marriage takes place, (and) to (the) provision and settlement herein made and created by way of trust, the said Mary agrees and covenants, then and in that case, the said estate and estates, real and personal, to be settled on the said Mary and her children, legal issue, from her and the said Hugh Wallace Wormly, for her and

their use, benefit, and emolument, on the future contingencies, and in manner and form following, to wit, for the use, benefit, and emolument of the said Mary and her children, if any she have, until the decease of her said intended husband, and then if she shall, by the will of heaven, be the longest liver, for, and during, and until the said children respectively arrive at legal maturity, at which time, each individual of them is to receive his equal dividend, as the law has provided in such case, leaving, at least, one full third part of the said estate, real and personal, in her possession, for and during her natural life ; then, at her decease, the landed part of the said one-third, be divided among the said children, according to law, and the personal property or estate, according to the will and disposal of the said Mary, at her decease ; but if the said Mary should depart this life before the decease of the said Wormly, then he is to enjoy the whole benefits, emoluments, and profits thereof, during his natural life, then to be divided among the said Wormly's children, their heirs and assigns, as he by will shall see cause to direct, and then this trust is, so far as it relates to the said Thomas Strode, to end, cease, and terminate forever ; and so, in like manner, should the said Mary depart this life without issue, then this trust to end, cease, and terminate, from that time and thereafter forever ; but should the said Wormly depart this life before the said Mary, and leave no issue, then the said Mary to have and enjoy the whole of the estate for and during her natural life, and then to descend to the heirs of said Wormly, or as his will relative thereto may provide. And it is further covenanted, bargained, and agreed by and between the said contracting parties, that whensoever, in the opinion of the said Thomas Strode, the said landed estate can be sold and conveyed, and the money arising from the sale thereof laid out in the purchase of other lands, advantageously for those concerned and interested therein, that then and in that case, he, the said Thomas Strode, is hereby authorized, and by these presents fully empowered, to sell, and by proper deeds of writing, convey the same, and the lands by him so purchased, shall be in every respect, to all the provisions, uses, trusts, and contingencies, as those were, by him sold and conveyed ; and it is further understood by the parties to these presents, that the said Hugh Wallace Wormly, under leave of the said Thomas Strode, his heirs and assigns, shall oc-

cupy the hereby conveyed estate, real and personal, the issue and pro-fits thereof, for and during the term of his natural life, and after that, the said estate to be divided agreeably to the foregoing contingencies; and in any of the foregoing cases and contingencies, when the trust herein granted is said to cease and terminate, the said Thomas Strode, or his heirs or assigns, shall and will release to the said Hugh Wallace Wormly, or to his aforesaid children, if any there be, or to the legal heirs, agreeable to the true intent and meaning thereof, and that by deed, or other proper instruments in writing, aptly and legally constructed for the purpose; and lastly, the said Thomas Strode, for himself, his heirs, and assigns, he will do and perform every act and acts," &c., necessary to carry into effect the foregoing trusts, &c.

The complainants are children of the marriage between Hugh W. Wormly and Mary Strode, parties to the foregoing deed of settlement; and they are seeking to recover slaves embraced in said settlement, which were sold by said Hugh W. Wormly in his lifetime, and in the lifetime of his wife, the said Mary, in violation, as it is alleged, of the terms of said deed, and of the rights of these complainants.

On the part of complainants, it is insisted that Hugh W. Wormly, by the terms of said deed, took only a life estate, with remainder to his children in fee; and with special power of appointment, by will, *as to the division,* amongst his children, and their heirs and assigns; and that, dying intestate without having attempted to exercise such power, said children took said estate as purchasers, subject to equal distribution among them.

On the part of defendants, it is urged that Hugh W. Wormly took a fee simple estate under the deed, at the death of his said wife, under and by virtue of the power reserved to him, of making division among the children, as he by will saw cause to direct.

Mary, the mother of complainants, died in 1848, and Hugh W., the father, died in 1856.

This bill was filed in November, 1857.

Antenuptial marriage settlements, fairly made, are, under all circumstances, favored and supported by courts of equity; not only because they are benignly intended to secure to the wife, a certain support in every event, and to guard her against being overwhelmed

by the misfortunes, or unkindness, or vices of her husband; but also because *a provision for the issue of the marriage is usually the great and immediate object in view*. Hence, where *articles*, even, are entered into before marriage, the *children* who may be afterwards born are considered as *purchasers*, whose rights are not to be divested by the subsequent acts of either or both of the married parties, whether done before or after their birth. *After marriage*, the terms of the contract, whether it be an executed settlement, or mere executory articles, cannot be altered by them. 2 Tuck. Lect. 441; 2 Kent, 170 (9th edit.) and 159; 1 Fonb. 190; 2 Rand. 326; 3 H. & M. 421; 2 Call. 5; Fearne, 90–107; 1 Washg. 47; 1 Sch. & Lefroy, 87; 3 H. & M. 399; Atherley on Marriage Settlements, 151 (25 Law Library); Hill on Trustees, 328.

The most favorable exposition will be made of words, to support the intention of the parties, especially where there are children to be provided for, or in contemplation of the parties, at the time. 8 Georgia R. 284; Cowper, 714; 2 Parsons on Contracts, 15, 16; Hill on Trustees, 69, 70; 2 Tucker Lect. 403.

A settlement on a married woman, without a *special agreement to the contrary*, is always understood to invoke a provision for the children. *Groves* v. *Clark*, 15 Eng. Chy. R. 140; 8 Georgia R. 284.

An executory trust founded on marriage articles, is intended usually to provide for the issue. Therefore, *unless the contrary clearly appear*, equity presumes that it could not have been the intention of the parties, to put it in the power of the parent to defeat the object of the settlement, by appropriating the whole estate. And on this presumption, the articles will usually be decreed, to be executed by limitations, in strict settlement. And it is immaterial that the words of the articles, if strictly followed, would entitle the parent to a more extensive interest, &c. Hill on Trustees, 328–9, note (e), and cases cited.

Marriage agreements, already executed, are subject to the same rules with limitations contained in other instruments. See 7 S. & M. 806. The court will therefore look to the lawful intentions of the parties, and endeavor to give them full effect.

The court will not readily adopt any construction, which would

defeat the beneficial objects intended by a marriage settlement, and vest the absolute fee-simple in the husband, to the exclusion of the children.

Nor will it construe a naked power of appointment, of a special and limited character, into a power coupled with an interest, or into a power of revocation, so as to enable the party to defeat the "great and immediate objects of the settlement," by appropriating the whole estate to his own use, if any other construction more consistent with such usual and benign object, can be adopted consistently with the terms of the instrument.

In the case before us, it is evident that the husband (Hugh W. Wormly), by the conveyance to the trustee, Thomas Strode, intended to divest himself of the legal title to the property embraced in the deed of settlement, upon the marriage therein contemplated, in favor of his intended wife, and the children of the marriage, if she had issue, reserving to himself only a life estate in the profits, and the power of dividing the estate by will, among "his children, their heirs and assigns," as he might see cause to direct.

He declares the use for which said conveyance in trust is made, to be, that on the event of the marriage, the estate is to be settled on the wife and children,—the issue of the marriage,—for their use and benefit, until the death of the husband; and then, if she survive him, until the children respectively arrive at age, at which time each individual to take his equal share as the law has provided, leaving at least one-third of the estate in her possession during her life, and at her death the land so left in her possession to be divided among the children according to law, and the personal estate according to her will.

But in case the husband shall survive the wife, *he* is to enjoy the profits and emoluments of the estate, during his life; and then it is to be divided amongst *his* "*children, their heirs and assigns*, as he by will shall see cause to direct," and then this trust to end.

So in like manner, if the wife shall die without issue, this trust to end. But if the husband shall die without issue, in the lifetime of the wife, she is to enjoy the whole estate for her life, remainder to the heirs of her husband (said Hugh), or as *his* will may direct.

In the meantime, under leave of the trustee, the husband is to occupy and enjoy the profits of the estate, during his life; and

upon the contingencies on which the trust estate is to end, the trustee is to release and convey the estate to the children, or to the husband, or to his heirs, according to the intent of the deed.

The marriage was consummated; these complainants are the issue of the marriage; the estate vested in possession of the tenants for life; the wife died; and then the husband died, without making any division by will, intestate.

Let us now examine this deed, in reference alone to the contingencies which have ripened into actual events, and which must therefore control its operation.

And first: What are the rights of the children,—these complainants,—under the deed?

The estate was *settled* on them and their mother, until the death of their father, and then the mother living, it continued in them, until and as each child arrived at age, when he was entitled to her equal share, according to law, &c.

But if the mother died, leaving issue, and the father living, *he* was to enjoy the profits and emoluments of the estate for life, and then, the estate to be divided among " *his children, their heirs and assigns,* as he by his will might direct," and then the trust to end.

The children, therefore, took a vested interest as purchasers, in any event, subject to the discretion of the father, only as to quantity.

What were the rights of the husband, on the death of the wife, under this deed?

If she died *without issue,* the fee was to revest in him, and the trust to terminate. If she *left issue,* he was to enjoy the profits and emoluments of the estate during his life; and at his death he reserved the naked special power of appointment by will,—not in whom the estate should vest, for he had already settled it by deed, to the use and benefit of his children, and passed the legal title out of himself, so that by no possibility could he divest the children of the estate,—but as to the *quantity or share* that each child should enjoy. This *naked power* of division among his " children, *their* heirs and *assigns,*" uncoupled either with an interest, a trust, or duty, was all that was left to him at his death. He was not bound to exercise it. The vesture of the estate did not depend

on its exercise. He had no trust to execute. The trust, by the terms of the deed, was vested in another, and his last solemn *duty* forbade that, without just cause, he should disturb the equality of division which natural affection suggested, and which the law without his intervention would make.

1st. It is most apparent, therefore, on the face of this deed, that it was intended to secure the estate for the use and benefit of the wife and children, during the life of the wife.

2d. That an ultimate remainder of the whole fee to his children, their heirs *or assigns*, as purchasers, and not as heirs, was clearly designed.

3d. That an equal division among them, according to law, was intended, unless some circumstance or casualty, addressing itself to parental care and discretion, might call for the exercise of the power of discrimination in the division,—reserved as an incentive to filial duty, as well as a protection against youthful folly, or misfortune.

4th. That the trust should terminate at his death, in favor of his children, is clearly expressed.

And, finally, that the trustee should execute conveyances to effect the object and intent of the trust, if such conveyances should be deemed necessary to terminate his legal estate, or vest it in the children, is also fully expressed.

These objects are apparent and lawful: the means provided to secure them are apt, just, and reasonable. The interests and powers reserved to the husband, are not only definite and consistent with the rights intended to be secured to the wife and children, but highly promotive of their best interests, in preserving parental authority.

Even if the *legal title* of these complainants had depended on the execution of the power, conferred on the husband by the deed, to divide the estate among the children, the mere omission to execute the power of division, would not in equity destroy their interest; but the deed would be there held to operate a direct gift or conveyance of *equal* shares, to the objects of the settlement, within the power.

It is only in cases of *naked powers*, where no estate, either legal or equitable, has been conferred upon the donee of the power, or

upon the objects of its exercise, that the failure to exercise the power of appointment will defeat the estate. Bare powers are never imperative, but dependent on the will of the donee of the power. But trusts, are always imperative in a court of equity.

Whenever, therefore, a trust arises, either by virtue of a legal interest in the donee of the power, or by *imperative direction* to perform the act *as a duty*, and the objects of the power are determinate, if the donee of the power does not execute it, a court of equity will not permit the estate, dependent on the discharge of such trust or imperative duty, to fail for the want of a trustee, or for his default. See 2 Tuck. Lect. 438–441, and numerous authorities there cited, both English and American; Hill on Trustees, 68–9, 70, and cases reviewed, and the tendency of modern decisions, to adopt in all cases a construction favorable to the objects of such powers, noted, and other authorities cited by counsel.

That this is an *executed* trust, and that property subsequently acquired will pass by this deed, if authority were wanting, see the case of *Neves* v. *Scott*, 9 How. U. S. R. 197.

We think, on the death of Hugh W. Wormly, by the provisions of this deed, the right to the possession and enjoyment of this property in dispute, in fee, became vested in his children as purchasers, and that the trust estate ceased and determined.

It follows from the conclusions at which we have arrived, in our investigation of this record, and the points relied on in argument, that the demurrer should have been overruled.

Let the decree be reversed, and cause remanded for further proceedings.

