## J. Southgate Yeaton et al.

### v.

## William C. Yeaton et al.

1. Statement—Ante-nuptial settlement—Construction. — Mary Du Val, by ante-nuptial agreement, conveyed to Southgate and Cowdery, trustees, certain stocks, the interest on which was to be paid to her intended husband, Yeaton, during their joint lives, and then to the children by the marriage, reserving the power to dispose of the stocks by will if she died before her husband. After their marriage an amicable suit was had in Virginia, by which the trustees were allowed to sell the stock and invest the proceeds in other securities, and under this decree part of the proceeds were invested in real estate. The sum of $9,000 was given to Yeaton, and in consideration he conveyed the lot 17 in question in this suit, with other property, to Cowdery, surviving trustee, in trust for Yeaton's wife. She and the trustee subsequently re-conveyed the lot to Yeaton without consideration. In 1871, Mrs. Yeaton died, without having made any appointment under the settlement. *Held*, that after the marriage it was not competent for the husband, wife and trustees, either by aid of the court or by arrangement between themselves, to alter, revoke or change the ante-nuptial settlement, so as to affect the rights of the children, and as to them the decree of the court in Virginia, and all acts under it, were nugatory; that the sale of the stocks by the trustees on the written request of Yeaton and his wife, as to the children, was a wrongful perversion of the trust property; that if Mrs. Yeaton had died without making an appointment under the settlement, equity would, at the suit of the children, treat such sale as wrongful, and hold the trustees personally responsible, and if necessary equity could reach the property b raising a constructive trust. As the rights of the children were to be determined by the original settlement, the real estate in question would be treated as being the trust property covered by such deed of settlement.

Yeaton v. Yeaton.

2. POWER OF APPOINTMENT.—During their joint lives Mrs. Yeaton had only a simple power of appointing, by writing under her hand and seal, or by will. She was not limited to any class of persons, and she might appoint her husband; but the requirements as to signatures and witnesses to such appointment must be complied with, and the settlement requiring three witnesses to such appointment, her unattested quit-claim deed to Yeaton was not, therefore, a good execution of the power.

3. INTEREST OF GRANTOR UNDER THE SETTLEMENT.—Under the settlement Mrs. Yeaton had not such an absolute property in the subject matter that she could transfer it without pursuing the power as an incident of ownership. There was no absolute property in her, so as to bring her case within the Married Woman's Act of 1861.

4. LACHES.—Delay in bringing an action where the parties are members of the same family, is not so strictly regarded as when they are strangers; and in this case one of the children being still a minor, and as the property was not to be divided until all had arrived at full age, laches cannot be considered as a defense.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding. Opinion filed December 8, 1879.

This was a bill in chancery, filed March 19, 1879, by appellants, children of full age of appellee, William C. Yeaton, and his late wife Mary Frances, against appellee and others, to compel said William C. to convey over to appellants, as such children, the legal title to certain lots in out-lot 17, Canal Trustees' Sub. of Sec. 33, T. 39, R. 14, E., situate in Cook county, Illinois. The court below, sustaining a general demurrer, dismissed the bill, and complainants appealed to this court. The material facts set out are, that Oct. 27, 1849, the parties all residing in the State of Virginia, an ante-nuptial deed of settlement was entered into between said William C. Yeaton and Mary Frances DuVal (the parties contemplating marriage), and Southgate and Cowdery, as trustees, duly signed and sealed by the respective parties, wherein, after reciting that a marriage was shortly intended between said William C. Yeaton and said Mary Frances DuVal, and that the latter was possessed of certain bank stock, and describing the same, it was provided, in substance, as follows:

"And whereas, it has been agreed that said William C. shall,

after said marriage, receive and enjoy during the joint lives of said William C. and Mary Frances, the dividends or interest of said stocks, and also that said stocks, after the decease of such of them as shall first die, shall be at the sole and only disposal of said Mary Frances, notwithstanding her coverture. Now, in pursuance of the before recited agreement, and in consideration of $5.00 paid to said Mary Frances by said Southgate and Cowdery, the said Mary Frances, by and with the consent of the said William C., hath granted, etc., and by these presents doth grant, etc., to said Southgate and Cowdery, their executors, etc., all of said bank stocks; to have and hold said stocks, to said Southgate and Cowdery, their executors, etc., upon such trusts, nevertheless, and to and for such intents and purposes, and under such provisions and agreements as are hereinafter mentioned, that is to say: in trust for the said Mary Frances and her assigns until the solemnization of said marriage; then, upon trust, that said Southgate and Cowdery, their executors, etc., shall pay to said William C. Yeaton during the joint lives of said William C. and Mary Frances, all the interest or dividends of said stocks, to and for his own use and benefit; and after the decease of such of them, the said William C. and Mary Frances, as shall first die, then upon trust that said Southgate and Cowdery, their executors, etc., shall and do assign, transfer and pay over all of said bank stocks to said Mary Frances, in case she survives said William C. Yeaton; but if she dies before him, then unto such person or persons, and at the time or times, and in such part and proportions, manner and form, as said Mary Frances shall, from time to time, notwithstanding her coverture, by any writing or writings under her hand and seal, attested by three or more credible witnesses, or by her last will and testament in writing, to be by her signed, sealed and delivered, published and declared in the presence of the like number of witnesses, direct, limit or appoint: and in default of such appointment or will, then the said Southgate and Cowdery, their executors, etc., are to pay the dividends arising from the said stocks to the natural or qualified guardian of the children that may be the issue of said marriage, and on their coming of age, or their being

married, to transfer the said stock to them in equal proportions; but in the event of there being no issue, or the same dying before they come of age, or before they are married, then to transfer the same to said William C. Yeaton; but in the event of the decease of said William C. Yeaton before the same shall be actually conveyed and paid over to him, then to such person or persons as would be the legal representatives of said Mary Frances by the statute for the distribution of intestate estates."

That marriage was solemnized soon thereafter; that afterwards, Nov. 15, 1851, said William C. and Mary Frances, his wife, as complainants, filed a bill in the Circuit Court of Alexandria County, Virginia, alleging amongst other things, that said marriage settlement did not express the intention of the parties thereto, as it did not give the trustees power to dispose of the stocks, and invest the proceeds in other property, and setting forth reasons for such change. The trustees, Southgate and Cowdery, were made parties defendant, who filed answers. A decree passed substantially as follows:

"IN THE CIRCUIT COURT OF ALEXANDRIA COUNTY,

NOVEMBER TERM, 1851.

"W. C. YEATON and
M. F. YEATON, his wife,
          *Plaintiffs*,
          vs.                          } IN CHANCERY.
F. W. SOUTHGATE and
G. W. COWDERY, TRUSTEES,
          *Defendants*.

"The answer in this cause having been filed, and the cause set for hearing by consent of parties, and the same now coming on for final decree on the bill, answer and other proofs filed therewith, the court, on consideration thereof, doth now, here, this 15th day of November, 1851, adjudge, order and decree that the defendants, trustees in the bill named, or the survivor of said trustees, do hereafter, on the written request of said complainants, W. C. Yeaton and wife, sell and dispose of the various stocks (or such portions as may be named in such request), contained in the marriage settlement between

Yeaton v. Yeaton.

the said Yeaton and his wife, and invest the proceeds arising from such sale in such other property as the said Yeaton and wife may desire, the property then procured to be held by said trustees for the benefit of the wife of said Yeaton, as prescribed in said settlement, and subject to said trust; such power of sale and re-investment to be and continue in said trustees, to be exercised by them from time to time, as may be just and expedient, and in accordance with the wishes of the parties concerned in interest. The sales and reinvestments thus made to be reported to this court regularly, as from time to time they may occur. But before the said trustees shall proceed to act under this decree, they shall give bond and security in the sum of $1,000, to be approved by the clerk of this court, conditioned for the faithful performance of their duties under this decree."

That afterwards, Nov. 16, 1864, said William C. Yeaton, being seized in fee simple of the premises in question, situate in Cook county, State of Illinois, by deed of that date, conveyed all his right, title and interest therein to Cowdery, surviving trustee of Mary Frances Yeaton, wife of said Wm. C. Yeaton, formerly Mary Frances Du Val, of the second part. (Here recites the decree in substance, and that on the written request of said Wm. C. Yeaton and wife, said stocks were sold, and a report of such sale returned to said court; and that said Mary Frances has directed that a portion of the proceeds of sale of said stocks shall be invested in the real estate hereinafter described.) "Now, this indenture witnesseth: that said Wm. C. Yeaton, in consideration of the premises, and in consideration of $9,000, part of the proceeds of the sale aforesaid, to him in hand paid by said Cowdery, surviving trustee, the receipt whereof is acknowledged, does alien, remise, convey, etc., unto said Cowdery, surviving trustee, all the said Wm. C. Yeaton's right, title and interest in and to the following real estate, in Cook county, Illinois: Out-lot 17, of Canal Trustees' subdivision of Sec. 33, T. 39, N. R. 14, E. of 3d P. M., and other property. To have and to hold all the interest of said Wm. C. Yeaton in the above mentioned and described premises, to said Cowdery, surviving trustee, as aforesaid. In trust, however,

for the use and benefit of said Mary Frances Yeaton, in accordance with said marriage settlement, and with all powers of sale and substitution under said decree.

"In witness whereof, etc., said first party sets his hand and seal, etc. WILLIAM C. YEATON. [SEAL.]"

That Nov. 6, 1868, a certain instrument in writing of that date was signed, sealed and delivered to said defendant, William C. Yeaton, by said Mary Frances, and said Cowdery, surviving trustee, without any valuable consideration, and not attested by witnesses, as required by the deed of settlement, alleging that the same was inoperative to convey the beneficial interest of the said Mary Frances, or the beneficial interest of her children and heirs-at-law. The deed is, in substance, as follows :

"Indenture made 6th of November, 1868, between Mary Frances Yeaton, wife of Wm. C. Yeaton, of the first part, George W. Cowdery, surviving trustee, etc., party of the second part, and said Wm. C. Yeaton, party of the third part. Witnesseth: that the said party of the first part, in consideration of $5 paid by the said party of the third part, the receipt whereof is acknowledged, and the said party of the second part, at the written request of said party of the first part, do alien, remise, release, convey and confirm unto said party of the third part, his heirs and assigns forever, all the estate, right, title, etc., of the said parties of the first and second parts, of, in and to the following real estate in Cook county, Illinois: Out-lot 17, in Canal Trustees' Subdivision of Sec. 33, T. 39, N., R. 14, E. of 3d P. M., and other property. To have and to hold the same to said party of the third part, his heirs and assigns, forever.

"In witness whereof, said parties of first and second parts set their hands and seals, etc.

"M. F. YEATON. [SEAL.]
"G. W. COWDERY, [SEAL.]
"Surviving Trustee."

That about July 15, 1877, said Mary Frances died, leaving her husband, William C. Yeaton, her surviving, and appellants, children of said marriage, and Lucia Chauncey Yeaton, a

minor, also a child of said marriage. That prior to her death, said Mary Frances made no direction, appointment or limitation in respect to said trust property, other than by said deed to her husband above mentioned; concluding with the proper prayer for relief.

Messrs. G. & W. GARNETT, for appellants; that Mrs. Yeaton could not dispose of the trust property, except in the modes and under the solemnities defined in the deed of settlement, cited Swift v. Castle, 23 Ill. 209; Conkling v. Doul, 67 Ill. 355; Montgomery v. Agricultural Bank, 10 Sm. & M. 566; Doty v. Mitchell, 9 Sm. & M. 435; Ladd v. Ladd, 8 How. (U. S.) 10; Crocker v. Quayle, 1 Russ. & Myl. 535; Hopkins v. Myall, 2 Russ. & Myl. 86; Mant v. Leith, 15 Beav. 524; Whiting v. Rust, 1 Gratt. *483; Crane v. Reider, 21 Mich. 24; Merwin v. Camp, 3 Conn. 35; Clark v. Graham, 6 Wheat, 577; Stone v. Ashley, 13 N. H. 38; Bartlett v. Spillsbury, 6 Mann. & G. 386; Wright v. Wakeford, 4 Taunt. 213; McClintic v. Ochilton, 4 West Va. 249.

Where there is a limitation over to children in default of appointment, the wife is a *feme sole* only so far as made so by the settlement: Mores v. Huish, 5 Ves. Jr. 692; Whistler v. Newman, 4 Ves. Jr. 129; Richards v. Chambers, 10 Ves. Jr. 580; Cocker v. Quayle, 1 Russ. & Myl. 535; Hopkins v. Myall, 2 Russ. & Myl. 86; Mant v. Leith, 15 Beav. 524.

A deed directly from wife to husband, made in good faith, without consideration, is ineffectual to convey the title, though there exists a statute authorizing married women to convey as if they were unmarried: White v. Wager, 25 N. Y. 328; Winans v. Peebles, 32 N. Y. 423.

Where articles of settlement are made before marriage, the children born of such marriage are considered as purchasers, whose rights cannot be divested by subsequent acts of either or both of the married parties, whether done before or after birth: Gorin v. Gordon, 38 Miss. 205; McBride v. Greenwood, 11 Geo. 379; Hildreth v. Eliot, 8 Pick. 293; Tabb v. Archer, 3 Hen. & Munf. 399; Richards v. Fitzgerald, 9 Irish Eq. 495.

The decree in Virginia was voluntary—a simple recording of

what the parties had agreed upon: Wadhams v. Gay, 73 Ill. 415.

It could not bind the infants, unless they were made parties: Kinnard v. Daniels, 13 B. Mon. 497; Richards v. Chambers, 10 Ves. Jr. 580; Botsford v. O'Connor, 57 Ill. 72.

Under the decree only a power to *re-invest* was granted. A gift to the husband, though upon the written request of the wife, was void : Morgan v. Elam, 4 Yerg. 375: Dunn v. Dunn, 1 So. Car. 354; Ellis v. Baker, 1 Rand. 47.

Equity will not remedy the defective execution of a power in favor of one who paid no consideration, or of those claiming under him, with notice; 2 Suyden on Powers, *93.

Mr. GEORGE W. SMITH, for appellees; that the deed from Mrs. Yeaton to her husband was a valid appointment, cited 1 Sugden on Powers, 300; 1 Story's Eq. Jur. § 97.

If a power is required to be executed in presence of three witnesses, and is executed in presence of two only, equity will interfere: Pool v. Potter, 63 Ill. 533.

As to laches of complainants: Williams v. Rhodes, 81 Ill. 571; Hamilton v. Lubukee, 51 Ill. 415.

The conveyance was made subsequent to the Married Woman's Act of this State, which made Mrs. Yeaton a *feme sole* as to her separate property: Gross' Stat. 1871, title " Married Women."

Generally, as to power of wife to convey her separate estate: Swift v. Castle, 23 Ill. 209; Cookson v. Toole, 59 Ill. 515; Patten v. Patten, 75 Ill. 446; Howarth v. Warmser, 58 Ill. 48; Kumbe v. Kumbe, 86 Ill. 1.

McALLISTER, J.   The marriage between William C. Yeaton and Mary Frances DuVal contemplated by the deed of settlement of date October 27, 1849, took place soon thereafter; and November 15, 1851, in an amicable suit in the Circuit Court of Alexandria County, Virginia, where the parties all resided, by bill in chancery, in which William C. Yeaton and wife were complainants, and Southgate and Cowdery, the trustees, were defendants, one child only having then been born of said marriage, but not made a party; a decree was entered changing

the terms of said settlement, by authorizing a sale of the trust property on the written request of Yeaton and wife, and the reinvestment of the proceeds in other property, to be held by the trustees under the same trust as provided in the deed of settlement. After this decree, the trustees, on the written request of Yeaton and wife, sold the original trust property, and paid over $9,000 of the proceeds to Yeaton, who, in consideration thereof, by deed of date Nov. 16, 1864, reciting the facts, conveyed the land in question in this suit to Cowdery, as surviving trustee. This deed contained the express trust: "In trust, however, for the use and benefit of said Mary Frances Yeaton, in accordance with said marriage settlement, and with all powers of sale and substitution under said decree."

After having obtained $9,000 of the proceeds of said trust property, covered by the deed of settlement, Yeaton, Nov. 6, 1868, without any consideration, procured his wife and Cowdery to re-convey to him, by quit-claim deed, the same land, so that in the end, he manipulated these proceeds into his own pockets, without any valuable thing whatever remaining substituted in their place; and the last mentioned deed was without any attestation of witnesses. The original deed of settlement vested the legal title to the bank stocks in Southgate and Cowdery, as trustees, but expressly gave the interest and dividends therefrom to Yeaton during the joint lives of himself and wife, the latter having during that time only a simple power of appointment; for it was provided that if she should die first, then they were to go to such person or persons as said Mary Frances should, by any writing or writings, under her hand and seal, attested by three or more credible witnesses, or by her last will and testament in writing, to be by her signed, sealed, published and declared in the presence of the like number of witnesses, direct, limit, or appoint, "In default of such appointment or will," then the trustees were to pay the dividends from the stocks to the guardian of the children that were the issue of said marriage, and on their coming of age, or being married, to transfer the stocks to them in equal proportions.

The wife died July, 1871, leaving her husband and the appellants and another child, a minor, surviving, without having

made a will, or any appointment under the deed of settlement, unless said quit-claim deed to her husband, unattested by any witnesses, shall amount to such appointment.

We are satisfied, from the authorities cited by appellants' counsel, that after the marriage it was not competent for the husband and wife and trustees, either by the aid of the Alexandria Circuit Court, or by any act or arrangement between themselves, to revoke, alter or change the deed of settlement so as to affect the rights of the children under it; and that, as to them, the said decree of the court, and all that was done under it in respect to the trust property, and altering the terms of the settlement, was nugatory and unavailing. These deductions are drawn from the nature and character of such deeds of settlement, the children being regarded as purchasers, and the doctrine of equity in respect to its jurisdiction over such settlements, and the effect of its decrees upon the rights of children thereunder who are not parties. 1 Richards v. Chambers, 10 Vesey, 580; Parks v. White, 11 Ves. 209; Richards v. Fitzgerald, 9 Irish Eq. R. 496; Hildreth v. Eliot. 8 Pick. 293; Kinnard v. Daniel, 13 B. Mon. 497; Gorin v. Gordon, 38 Miss. 205; Tabb v. Archer, 3 Hen. & Munf. 397.

The real case, as presented by the record, is between appellants, the children, and William C. Yeaton, appellee, their father. If, therefore, as we have seen, the decree purporting to alter the terms of the original settlement, and the acts of Yeaton and wife and the trustees thereunder, are nugatory, so far as the children are concerned, then it follows that their rights, whatever they are, must be determined solely with reference to the provisions of the settlement, and the contingencies happening thereunder, and not by or under the decree of the Virginia Court, by which they are in no respect bound or affected.

In this view, the sale of the stocks by the trustees on the written request of Yeaton and wife, being wholly unauthorized by the deed of settlement, must, as to the children, be regarded as a wrongful perversion of the trust property. That being so, and there can be no doubt of it, then, if Mrs. Yeaton died without having made any appointment, under the power, a court of equity would, at the suit of the children, treat such

sale of the stocks as a wrongful perversion of the trust property, and hold the trustees personally responsible therefor; or, a portion of the proceeds having gone to William C., who was a participator in the act, it would hold him personally responsible therefor; or, such proceeds having been the consideration for the conveyance of the land to Cowdery as surviving trustee, equity, without regard to the form of trust expressed in the deed by which the conveyance was made, would attach to the estate in the hands of Cowdery the same trust as under the original settlement; and Yeaton having obtained a re-conveyance to himself by his wife and Cowdery, of the same land, without consideration, and with full knowledge of the facts, equity might attach the same trust to the estate in his hands; or, if necessary to the ends of justice, could reach the property by raising a constructive trust; for it is an established doctrine of equity that whenever the circumstances of a transaction are such that the person who takes the legal estate in property cannot also enjoy the beneficial interest, without necessarily violating some established principle of equity, the court will immediately raise a constructive trust, and fasten it upon the conscience of the legal owner, so as to convert him into a trustee for the parties, who in equity, are entitled to the beneficial enjoyment. Alwood v. Mansfield, 59 Ill. 507.

From these views of the case, it seems to us that the principal questions remaining are: (1), whether the quit-claim deed, without consideration, from Mrs. Yeaton and Cowdery to William C. Yeaton, was a good execution of the power of appointment, so as to cut off the children; (2), if not, whether Mrs. Yeaton had any such absolute ownership of the stocks under the deed of settlement as that, by the general incidents of ownership, she could transfer, by any means sufficient for the purpose and independent of the power; (3), whether, if she could transfer it only by the mode prescribed by the power, and the execution of it was defective, it will be aided and held good by equity; (4), laches of appellants.

As the rights of appellants are to be determined by the original deed of settlement, we must regard the real estate in question, under the circumstances, as being the trust property

covered by that deed. To that deed we must look, therefore, for the rules as to the rights of appellants and appellee. It gave the latter only the beneficial use of the stocks during the joint lives of himself and wife; and during that time the wife was vested only with a simple power of appointment by specified instruments, viz.: a writing or writings under her hand and seal, attested by three or more credible witnesses, or by will in writing, signed, sealed, published and declared, in the presence of a like number of witnesses. An appointment by either of these modes would suffice. If done by writing under her hand and seal, attested by three or more witnesses, such writing need not be delivered. She could retain it in her own hands until her death; and if fairly made, it would be good. It will be perceived that she was not limited to any class of persons, such as children of the marriage or relations; so it was not a power in the nature of a trust, and a court of equity could neither compel an exercise of the power nor supply the want of it. Brown v. Higgs, 8 Vesey, 561. And therefore she might appoint her own husband ; but if she failed to make any, then the trust property would go to her children. She being a married woman, and presumably under the dominion of her husband, and occupying a position in the premises between her children and husband, she was directly exposed to his influence. That position was evidently appreciated in preparing the settlement of the property which was her own before the marriage settlement. Hence the ceremonies required to attend the making of the appointment. They were designed and intended as a protection to her against the influence of her husband; and were consequently matters of substance, and not of mere form. This intention is apparent from the whole instrument, and that construction has been given to similar ones by courts of justice of the highest respectability. As in Cocker v. Quale, 1 Russ. & Myl. 535, Sir John Leach, Master of the Rolls, speaking of ceremonies required by a similar power, says: "No act of hers, unless according to the terms of the settlement, could, therefore, bind her. Those terms are to be considered as prescribed in order to protect her against the influence of her husband." And again,

Yeaton v. Yeaton.

in a similar case, Hopkins v. Myall, 2 Russ. & Myl. 86, the same learned jurist said: "The ceremonies required by the settlement were introduced for the express purpose of protecting the wife against the influence of the husband, and are matters of substance, and not of form; and without adherence to those ceremonies, the interest of the children could not be defeated."

Other authorities could be cited in support of the same view, but it is unnecessary; for it is unreasonable to suppose that such ceremonies were required for the mere purpose of securing proof of the fact of signing and sealing. The subjection of women, in the marriage relation especially, has presented what seems to all enlightened minds of the present day an ugly and harsh feature of that venerable and noble system, the common law, from its dim origin down to within the last quarter of a century; a result of the bad teaching and worse practice of centuries during which the progress of civilization in other respects seems quite inconsistent. Whether the dominion of husband over wife be due to an outgrowth of barbarous ages and to such teachings wholly, or to an inherent difference between the two sexes, or both, is immaterial. It is and has been recognized as a fact. In perhaps every State in the Union, statutes have provided that it was indispensable that a married woman, in order to a legal alienation of any interest of hers in land, should be examined by a public officer, separate and apart from her husband, whether or not she executed the instrument voluntarily and without fear and compulsion of her husband. The ceremonies required by settlements have been dictated by the same considerations, or from the same presumption of influence and dominion. These ceremonies being intended as matters of substance, all the authorities agree that in the exercise of a power derived from a settlement, the power must be pursued as respects all substantial requisites. 2 Sug. on Powers, Sec. 3, Marg. p. 250, et sequitur; Ladd v. Ladd, 8 How. U. S. 27; Montgomery v. Bank, 10 Smedes & M. 566; Mant v. Seeth, 15 Beavan, 524. And the rule, as stated above, is recognized by the several opinions delivered in the case of Burdett v. Spillsbury, 6 Manning & Granger, 386.

The unattested quit-claim deed from Mrs. Yeaton, and

Cowdery, as surviving trustee, to appellee, is not therefore a good execution of the power, considering it as a simple power. The next question is, whether Mrs. Yeaton had, under the settlement, any such absolute property in the subject-matter as that she could transfer it, without pursuing the power as an incident of ownership. We think she had not. As we have already shown, from the time of her marriage to her death the legal title was in the trustees, and the beneficial use or interest was in her husband. She had no absolute property or interest in the subject-matter of the settlement, but a power only. The distinction between property and a mere power is recognized and established by the authorities. Nannock v. Horton, 7 Vesey, 391; Bradley v. Westcott, 13 Ves. 445; Anderson v. Dawson, 15 Ves. 532; Barford v. Street, 16 Ves. 135.

In this view, cases of the class of Swift v. Castle, 23 Ill. 209, have no application; for there the wife had an absolute equitable estate; and the question was whether, under the general doctrine of equity in respect to the equitable estates of married women, a conveyance by her not in the mode or for the purposes designated by the settlement, was good; and a majority of the court held it was not. That was before the Married Woman's Act of 1861; and quite likely, under that act, the Supreme Court would hold, under the same circumstances, having a separate estate under that act, she, as an incident of ownership, might convey in any manner capable of transferring the property. But here there is no such absolute property in her as to bring the case within the Married Woman's Act of 1861.

The distinction is this: Where a married woman is the owner of any absolute interest in property under the settlement, so that the incidents of property, as to the right of disposition, will attach, then we concede that, under the general doctrines of equity and the force of the Married Woman Act of 1861, she might dispose of it in any manner capable of transferring it; but where she has no property in the subject-matter of the settlement, but only a simple power over it, as by appointment, then she must dispose of it in the manner prescribed by the power. Story, in speaking of this distinction, has well said: "And this distinction is very important; for in many cases

Yeaton v. Yeaton.

courts of equity will not interfere to aid a defective execution of powers in favor of volunteers, whatever it may do in favor of purchasers." 2 Story's Eq. Jur. Sec. 1391. The power not having been well executed, and Mrs. Yeaton having no absolute interest to which the incidents of proprietorship would attach, the next question in order is, whether William C. Yeaton, being a mere volunteer, equity will interfere to aid such defective execution and hold it good? We think not. As a general rule, equity will grant such aid only in favor of those persons who, in a moral sense, are entitled to it, and who, from wise considerations, are viewed with peculiar favor, and provided there are no opposing equities. It will do so in favor of purchasers, creditors, a wife, a child and a charity, but not in favor of the donee of the power, a husband, or grand-children or remote relations, or strangers generally. 1 Story's Eq. Jur. Sec. 95, and cases in notes. Nor will it do so in favor of volunteers, who are not within the favored class. Badgley v. Votrain, 68 Ill. 25; Wadhams v. Gay, 73 Ill. 415.

Lastly, as to the question of laches. Mrs. Yeaton died in July, 1871, and this bill was filed in March, 1879. Appellants allege that they were ignorant of their rights, but not that they were ignorant of the facts and circumstances, until near the time of filing this bill. This allegation is not as it should be, but we are inclined to think that the relationship of the parties, it being that of children and father, theirs being the only case we are passing upon, is an important element, bearing upon the question of laches. Delay in instituting proceedings where the parties are members of the same family, is not so strictly regarded as where they are strangers to each other. Laver v. Fielder, 9 Jur. N. S. 190. But there is another circumstance bearing upon the question of laches, that by the settlement the stocks were not to be transferred to the children until their coming of age, or being married. We understand that one was a minor when the bill was filed. We think on the whole case, the court below erred in sustaining the demurrer to and dismissing the bill, and its decree will be reversed and the cause remanded.

Reversed and remanded.