524 So.2d 325 (1988)
ESTATE OF Fred B. HENSLEY, Deceased, Wilson Barrett Hensley, Executor,
v.
ESTATE OF Hazel O. HENSLEY, Deceased, Gerald M. Owen, Executor.
No. 57636.
Supreme Court of Mississippi.
April 27, 1988.
*326 Eugene D. Brown, Jr., Spencer & Brown, Holly Springs, for appellant.
Colmon S. Mitchell, Smith, Phillips & Mitchell, Batesville, for appellee.
Before ROY NOBLE LEE, C.J., and SULLIVAN and GRIFFIN, JJ.
GRIFFIN, Justice, for the Court:
This dispute between estates turns on whether the lower court erred in construing an ante-nuptial agreement giving Hazel O. Hensley, now deceased, an award of monthly installments from her deceased husband as a part of his promise to support her therein from his "personal estate." Mrs. Hensley filed a petition for specific performance, which the court granted allowing Hazel Hensley $1,000 per month for the remainder of her lifetime. The Executor of the Estate of Fred B. Hensley appealed. Thereafter, Mrs. Hensley died. The cause was revived against her estate. Here the Estate of Fred B. Hensley (Hazel's husband) contends that the chancellor did not interpret the agreement as written, but applied improper rules of construction in reaching his decision. We agree, and so reverse.

I.
In contemplation of marriage and on August 27, 1975, a document entitled "Ante-Nuptial Agreement" was executed by and between Fred B. Hensley (of a mature age) and Mrs. Hazel Owens (aged 63), both of Holly Springs, Marshall County, Mississippi. The couple subsequently married on September 5, 1975, and lived together as man and wife until Mr. Hensley's death on July 4, 1985. Both Fred Hensley and his wife had two children each from previous marriages (included are the executors of the estates on appeal  Wilson Hensley, appellant, was born to Fred and Mary Hensley, and Gerald Owens, appellee, was born to Hazel and James Owens).
The Last Will and Testament of Fred B. Hensley, deceased, was admitted to probate upon the petition of Wilson B. Hensley, Executor, and his brother, William Travis Hensley. Letters Testamentary were granted to Wilson B. Hensley and notice to creditors was published.
The claim of Hazel Hensley was initiated by Petition for Specific Performance, later amended by leave of the court, in which she alleged that paragraph 4 of the Ante-Nuptial Agreement[1] entitled her to receive lifetime support from both Fred B. Hensley and, after his death, from his estate. A Motion for Widow's Allowance was also filed by Mrs. Hensley.
The court granted Hazel Hensley's Petition for Specific Performance and awarded her $1,000 per month for the remainder of her lifetime. The Motion for Widow's Allowance was denied.
Motion for New Trial was made and denied. Accordingly, the Estate of Fred B. Hensley files this appeal.

II.

Did the lower court err in granting Hazel O. Hensley's Motion for Specific Performance?
In his findings of fact, the chancellor determined that Hazel Hensley, without hesitation, commingled her funds with those of her husband. He further found that Mrs. Hensley's expectations of a monetary give-and-take in the marriage were not diminished by the death of Fred Hensley. *327 Finally, the chancellor held that by virtue of a provision in the will executed by Fred Hensley, leaving Hazel O. Hensley with a life estate in the house but no real outside source of income for its upkeep, the intent of paragraph 4 of the Ante-Nuptial Agreement was to provide for his wife during her lifetime.
Appellant contends that the chancellor failed to interpret the agreement in conformity with settled principles of law which require the entire agreement to be construed together, giving undue weight to no individual provision thereof.
By this argument, appellant refers to paragraphs 5 and 6 of the Ante-Nuptial Agreement, which he contends must be read in conjunction with paragraph 4, and the only apparent meaning to be given to the agreement allots Mrs. Hensley support and maintenance for Mr. Hensley's lifetime.
These paragraphs read as follows:
5.
It is further agreed that Mr. Hensley and Mrs. Owens do mutually waive and release to each other, and to their heirs at law, devises, legatees, successors and assigns, all claims of dower, courtesy, homestead, widow's allowance, all rights of support, and all claims as heirs at law of each other in and to their respective properties mentioned above.
6.
It is further agreed that nothing herein shall be construed to be a bar to either party's giving any property of which he or she may be possessed to the other party, by will or otherwise. It is understood that each party to this agreement shall control his or her own personal estate, as described herein, and do with the properties whatsoever he or she wishes and wills, by his or her order or directions, or by a testament, the same as either could or would do if no marriage relation existed between them.
Reading the foregoing paragraphs along with paragraph 4, the Estate of Fred B. Hensley asserts that the plain language of the agreement limits the duty of support to the "personal estate" of the deceased, meaning the assets owned and controlled by him during his lifetime, and that on his death the obligation to support Hazel Hensley under the agreement terminated.
Ante-nuptial settlements, when fairly made, are favored by the courts, not only on account of the security thereby provided for the wife, but also because of provision for the issue of the marriage is usually the great and immediate object in view; and therefore, the most favorable exposition will be made of the words of such instruments, to support the intention of the parties. Gorin v. Gordon, 38 Miss. 205 (1859).
An antenuptial contract is like any other contract, Stevenson v. Renardet, 83 Miss. 392, 35 So. 576 (1904), and as such is subject to the same rules of construction and interpretation applicable to contracts. See, Hand, Shelton, Mississippi Divorce, Alimony and Child Custody, (1981).
The first rule of contract interpretation is to give effect to the intent of the parties. Sumter Lumber Co. v. Skipper, 183 Miss. 595, 608, 184 So. 296, 298 (1938). More correctly stated, our concern is not nearly so much what the parties may have intended as it is with what they said, for the words employed are by far the best resource for ascertaining intent and assigning meaning with fairness and accuracy. Id.
We believe the agreement in the case at bar clearly provides that support and maintenance were only intended for Mrs. Hensley during her husband's lifetime; however, were we to view the contract by means of extrinsic or parol evidence, the conclusion reached is the same.
Bob Crutcher, the attorney who drafted the Ante-Nuptial Agreement, testified that the intent of Mr. Hensley at all times was to provide for his wife during his (Mr. Hensley's) lifetime. Crutcher stated that on August 27, 1975, Fred Hensley and Hazel Owens came to his office, at which time he read the entire agreement to them paragraph by paragraph, and asked if both parties understood it. He further stated *328 that he knew Mrs. Owens understood all the provisions and that the whole purpose of it was very clear in her mind. Further, Crutcher stated that although Fred Hensley executed the agreement at that time, Hazel Owens took the agreement with her and apparently executed it two days later, having received independent advice, and had the document notarized by an officer of the Merchants and Farmers Bank in Holly Springs, a Mr. C.L. Robinson.
Further, Mr. Crutcher, fearing the consequences of a Tennessee case, the cite of which we were not given, in drafting the agreement desired to make sure that Mrs. Hensley (then Mrs. Owens) was not deceived in any manner and made a part of the agreement what amounts to a financial statement of Mr. Hensley, fully disclosing to Mrs. Owens all of his assets.[2] Mrs. Owens was not required to disclose her assets even though the record shows that she had a separate estate.[3] There is no inference that the parties did not deal honestly and fairly with each other.
This Court has said that:
We have long adhered to the rule that a written instrument must be considered as a whole and all parts construed together. (citations omitted) In clinging to this rule we are prevented from ascertaining the meaning of a contract by resort to solitary or fragmentary parts of the instrument.
Texaco, Inc. v. Kennedy, 271 So.2d 450, 452 (Miss. 1973).
Further, we have held that we will not create for the parties a contract to which they themselves have not agreed to. Glantz Contracting Co. v. General Electric Company, 379 So.2d 912, 916 (Miss. 1980). Finally,
It is not now and never has been the function of this Court to relieve a party to a freely negotiated contract of the burdens of a provision which becomes more onerous than had originally been anticipated.
Transcontinental Gas v. State Oil and Gas Board, 457 So.2d 1298, 1322 (Miss. 1984), reversed on other grounds, 474 U.S. 409, 106 S.Ct. 709, 88 L.Ed.2d 732 (1986).
The chancellor was apparently influenced by what he considered to be rather destitute circumstances of the widow; however, a full reading of the record divulges that Mr. Hensley had actually been very benevolent. Not only did he by his will provide Mrs. Hensley with a home for the rest of her life, but also during his lifetime she was able to accumulate, and apparently from him, certificates of deposit amounting to approximately $40,000. Also, during the period of the marriage, Mrs. Hensley had sold the home of her first husband and insofar as the record shows this was not shared with Mr. Hensley but with her children. Also, the chancellor apparently overlooked the fact that Mrs. Hensley's social security payments received a sizeable increase upon the death of Mr. Hensley and she also became the recipient of a portion of his state retirement.
We find that from the terms of the contract that the intent of the parties was to limit the wife's support during the lifetime of her husband. We, therefore, hold that the chancellor misconstrued the contract.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.

APPENDIX

ANTE-NUPTIAL AGREEMENT
THIS ANTE-NUPTIAL AGREEMENT has been made and entered into by and between FRED B. HENSLEY, of Marshall County, Mississippi, party of the first part, hereinafter referred to as "Mr. Hensley"; and MRS. HAZEL OWENS (also known as Mrs. James Owens), of Marshall County, *329 Mississippi, party of the second part, hereinafter referred to as "Mrs. Owens", WITNESSETH:

1.
Mr. Hensley and Mrs. Owens contemplate legal marriage, under the laws of the State of Mississippi, and it is agreed:
That all of the properties of any name or nature, real, personal or mixed, wherever they may be found, belonging to Mr. Hensley before marriage, or those which may be acquired or accumulated after such marriage, by purchase, trade, gift or otherwise, shall be and remain forever his personal estate, and this shall include all interest, rents and profits which may in time accrue, or result in any manner from increase in value, or be collected for the use of the same in any way.

2.
It is further agreed that all properties of any name or nature, real, personal or mixed, wherever they may be found, belonging to Mrs. Owens before marriage, or those which may be acquired or accumulated after such marriage, by purchase, trade, gift or otherwise, shall be and remain forever her personal estate, and this shall include all interest, rents and profits which may in time accrue or result in any manner from increase in value, or be collected for the use of the properties in any way.

3.
It is further agreed between Mr. Hensley and Mrs. Owens that each will sign with the other all title papers, deeds, or other papers necessary to transfer property when sold to a purchaser as such title papers are usually executed by a man and wife in the State of Mississippi, or if the property be located elsewhere, then according to the laws and procedures of such other jurisdiction, and that this courtesy shall be prompt at any time, and in any place.

4.
It is further agreed by Mr. Hensley that he does and will, from his own personal estate, assume the necessary expenses of the support and maintenance of Mrs. Owens.

5.
It is further agreed that Mr. Hensley and Mrs. Owens do mutually waive and release to each other, and to their heirs at law, devisees, legatees, successors and assigns, all claims of dower, courtesy, homestead, widow's allowances, all rights of support, and all claims as heirs at law of each other in and to their respective properties mentioned above.

6.
It is further agreed that nothing herein shall be construed to be a bar to either party's giving any property of which he or she may be possessed to the other party, by will or otherwise. It is understood that each party to this agreement shall control his or her own personal estate, as described herein, and do with the properties whatsoever he or she wishes and wills, by his or her order or directions, or by a testament, the same as either could or would do if no marriage relation existed between them.

7.
Mr. Hensley has and does disclose unto Mrs. Owens that the substance of his present estate includes:
[Here follows list of assets]
NOW, THEREFORE, for a valuable consideration and in consideration of the premises, the undersigned parties do execute this agreement in counterpart, each executed counterpart to be for all purposes considered an original, on this the 27th day of August, 1975.
 /s/ Fred B. Hensley
 Fred B. Hensley
 /s/ Mrs. Hazel Owens
 Mrs. Hazel Owens
STATE OF MISSISSIPPI
COUNTY OF MARSHALL
Personally appeared before me, the undersigned authority in and for said County and State, duly qualified, commissioned and acting, the above named FRED B. HENSLEY, who acknowledged to me that he signed and delivered the foregoing Ante-Nuptial Agreement on the day and year therein mentioned, for the purposes therein *330 stated, as his free and voluntary act and deed.
Given under my hand and official seal of office affixed, on this the 27th day of August, 1975.
 /s/ Mary Lloyd Betts
 Notary Public
 (SEAL)
 My commission expires:
 My Commission Expires December 22, 1977
 STATE OF MISSISSIPPI
 COUNTY OF MARSHALL
Personally appeared before me, the undersigned authority in and for said County and State, duly qualified, commissioned and acting, the above named MRS. HAZEL OWENS, who acknowledged to me that she signed and delivered the foregoing Ante-Nuptial Agreement on the day and year therein mentioned, for the purposes therein stated, as her free and voluntary act and deed.
Given under my hand and official seal of office affixed, on this the 27th day of August, 1975.
 /s/ C.L. Robinson
 Notary Public
 (SEAL)
 My commission expires:
 My Commission Expires Feb. 4, 1979
NOTES
[1] This paragraph reads:

It is further agreed by Mr. Hensley that he does and will, from his own personal estate, assume the necessary expenses of the support and maintenance of Mrs. Owens.
[2] The agreement is attached as an appendix.
[3] According to the record, the Tennessee case held that an ante-nuptial agreement could be revoked by the widow after her husband's death if she had been deceived about the size of the estate.