928 So.2d 1001 (2006)
James Harlon LONG, Appellant
v.
Diane B. LONG, Appellee.
No. 2004-CA-01355-COA.
Court of Appeals of Mississippi.
May 9, 2006.
Lee Davis Thames, Jr., Jackson, attorney for appellant.
Thomas T. Buchanan, Laurel, attorney for appellee.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. In this domestic relations case, James Harlon Long appeals the chancellors' property distribution and award of alimony to Diane B. Long. James argues that the chancellor: (1) failed to enforce James' and Diane's antenuptial agreement, (2) erred in her equitable distribution of the marital and non-marital property, and (3) erred by awarding Diane periodic alimony. We find that chancellor should be affirmed in part, reversed in part, and remanded.

FACTS
¶ 2. On December 22, 1993, James and Diane executed an antenuptial agreement. It was prepared by James' attorney and provided that each parties' separate property would remain their separate property in the event of death or divorce.
¶ 3. On January 1, 1994, James and Diane were married. This was James' second *1002 marriage and Diane's third marriage. No children were born of the marriage. Both James and Diane had children from prior marriages.
¶ 4. On May 28, 2002, Diane filed for divorce on the grounds of habitual cruel and inhuman treatment and uncondoned adultery. After an evidentiary hearing, Diane withdrew her claim for a divorce on the grounds of habitual cruel and inhumane treatment and the chancellor denied Diane a divorce on the ground of uncondoned adultery. Thereafter, James and Diane executed and filed a consent to divorce on the grounds of irreconcilable differences, and they agreed for the chancellor to decide the proper distribution of property, alimony and attorney's fees.
¶ 5. The chancellor entered an order in which she declined to enforce the antenuptial agreement, divided the marital and non-marital property, granted Diane periodic alimony payments in the amount of five hundred dollars per month, and denied Diane's request for attorney's fees. It is from this order that James appeals.

STANDARD OF REVIEW
¶ 6. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Sanderson v. Sanderson, 824 So.2d 623, 625-26(¶ 8) (Miss.2002).

ANALYSIS

I. Did the chancellor err by failing to enforce the antenuptial agreement?
¶ 7. James claims that the chancellor was in error when she failed to enforce the antenuptial agreement. As a result, the chancellor awarded Diane a portion of the increase in value of James' business and his home. Yet, the chancellor failed to award James a portion of Diane's home.
¶ 8. On December 22, 1993, James and Diane signed a simple two page antenuptial agreement. The relevant portion of the agreement provides:
Whereas, each of the parties owns individual real and personal property, the nature and extent of the holdings of each party having been disclosed to the other, and
Whereas, the parties desire that all property now owned by each of them shall be free from any claim of the other that may arise by reason of their contemplated marriage,
IT IS THEREFORE AGREED:
1. After the solemnization of the marriage between the parties, all property now separately owned by each of them, whether real or personal, shall remain the separate property of each of them free from any claim that may be made by the other by reason of their marriage, and with the same effect as if no marriage had been consummated between them.
Each of the parties expressly waives any and all rights or interest which he/she may hereafter be entitled, as wife or husband, in and to any property, real or personal, which the parties now own separately.
¶ 9. Diane admitted that she read and signed the agreement. Diane testified that she understood the agreement to mean that James was entitled to keep the assets he had before the marriage, and she was entitled to keep the assets she had before the marriage. Nevertheless, Diane asked the chancellor to award her certain assets from James' business and home.
¶ 10. At the time of the marriage and execution of the agreement, James and *1003 Diane each owned their own separate homes. James owned a business, Long's Auto Supply Co., Inc., and the real property on which the business is located. Diane owned a retirement account, established by her employer, and a separate individual retirement account.
¶ 11. They were married for eight years. During the marriage, Diane sold her home and invested the proceeds in a certificate of deposit. James' home was taken in eminent domain proceedings. The proceeds that he received from the eminent domain action were used to pay the mortgage on the house that was destroyed. The balance was applied to the purchase of additional land for the construction of a new home. James borrowed an additional sixty-five thousand dollars ($65,000) for the construction of the new home. The bank offered a lower interest rate if Diane's certificate of deposit was pledged as additional collateral. The certificate of deposit was pledged as security for the note. Diane's certificate of deposit was never used to pay the loan.
¶ 12. The chancellor found that substantial commingling of their separate assets occurred and that the antenuptial agreement did not address how the parties should divide property acquired or accumulated during the marriage. The agreement did not provide for the division of assets that were commingled nor for the increase in value of assets. Considering the totality of the circumstances, the chancellor found that the antenuptial agreement could not govern the equitable division of the Long's assets.
¶ 13. An antenuptial agreement is enforceable just as any other contract. Mabus v. Mabus, 890 So.2d 806, 818(¶ 53) (Miss.2003). The Mississippi Supreme Court has held that antenuptial agreements must be fair in the execution, and a duty of disclosure shall be imposed. Smith v. Smith, 656 So.2d 1143, 1147 (Miss.1995) (citing Estate of Fred Hensley v. Estate of Hazel O. Hensley, 524 So.2d 325, 327 (Miss.1988)). The agreement entered between James and Diane was fairly executed. There was full disclosure of each others' assets.
¶ 14. The first rule of interpretation of contracts is to follow the intent of the parties. Id. It is clear that the parties intended for Diane's home and retirement account to remain her separate property. Also, they intended that James' home and business would remain his separate property. During the marriage, Diane sold her home and invested the proceeds in a certificate of deposit. Under the antenuptial agreement, the certificate of deposit should remain Diane's separate property.
¶ 15. James' premarital home was taken in an eminent domain proceeding. The proceeds of this taking were used to purchase property and build a new home. Accordingly, due to the language of the agreement, James' new home does not become marital property by virtue of being constructed during the marriage. Instead, it remains James' separate property. The chancellor failed to credit James with the proceeds of the condemnation. She also incorrectly concluded that there was no outstanding indebtedness on the home. Based on their agreement, James is entitled to exclusive use, ownership and possession of the home free from any claim by Diane. Furthermore, James is responsible for the outstanding indebtedness.
¶ 16. We conclude that it was clearly erroneous for the chancellor to fail to enforce the antenuptial agreement. Therefore, we reverse and render the chancellor's judgment that determined that the $30,000 increase in value of James' business and $30,000 for her share of the increase in value of James' home should be *1004 considered part of the marital estate. Accordingly, we reverse the chancellor's judgment and find that no part of the increase in the value of James' business or home should be awarded to Diane.

II. Did the chancellor err in her distribution of marital assets?
¶ 17. The chancellor analyzed each of the Ferguson factors and reached an equitable distribution that left each party with roughly the same amount in assets. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). Indeed, the chancellor found that most of the household goods were non-marital as they were brought to the marriage by Diane. Other property accumulated during the marriage was divided equitably. Accordingly, with the assets from Section 1 of this opinion removed from the equitable distribution of assets, we find no error in the chancellor's award of the remaining marital assets and affirm on this issue.

III. Did the chancellor err by awarding Diane periodic alimony?
¶ 18. After the chancellor considered the equitable distribution of the parties' marital assets, the chancellor analyzed the factors set forth in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993) and determined that Diane was entitled to an award of five hundred dollars ($500) per month, permanent periodic alimony. James challenges both the award and amount of alimony.
¶ 19. In Lauro v. Lauro, 847 So.2d 843, 848-49(¶ 13) (Miss.2003), the supreme court held:
Alimony is considered only after the marital property has been equitably divided and the chancellor determines one spouse has suffered a deficit.
Division of marital assets is now governed under the law as stated in Hensley and Ferguson. First, the character of the parties' assets, i.e., marital or non-marital, must be determined pursuant to Hensley. The marital property is then equitably divided, employing the Ferguson factors as guidelines, in light of each parties' non-marital property. Ferguson, 639 So.2d at 928. If there are sufficient marital assets which, when equitably divided and considered with each spouse's non-marital assets, will adequately provide for both parties, no more need be done. If the situation is such that an equitable division of marital property, considered with each party's non-marital assets, leaves a deficit for one party, then alimony based on the value of non-marital assets should be considered.

Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994) (emphasis added). Like alimony, child support must be considered collectively with all property division. All property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together. "Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede." LaRue [v. LaRue], 172 W.Va. 158, 304 S.E.2d [312] at 334 [1983] (Neely, J., concurring).
(emphasis in original). Because we reverse the chancellor's equitable division of assets that included the award of a portion of the increase in the value of James' home and business, we also remand the award of alimony for further proceedings by the chancellor consistent with this opinion. On remand, the chancellor is instructed to revisit the award of alimony after she considers the properly classified and division of marital assets. Lauro, 847 So.2d at 850(¶ 17).
*1005 ¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF CLARKE COUNTY IS AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COST OF THIS APPEAL ARE ASSESSED EQUALLY TO THE APPELLANT AND THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, BARNES AND ISHEE, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.