CARLTON, J.,
for the Court:
¶ 1. Following a hearing on the issue of whether an antenuptial agreement precluded a challenge to a will or deed executed after marriage, the Chancery Court of Adams County granted summary judgment in favor of Carolyn C. Guido,[1] the proponent of the antenuptial agreement’s validity. Janice C. Cooper, the contestant of the will, filed a motion to set aside the judgment, which was subsequently denied by the chancellor. Aggrieved, Janice, now appeals, arguing that the chancellor erred in finding that the antenuptial agreement at issue was a valid and binding contract which operated to preclude any challenge to a will or deed executed by her spouse after marriage. Finding no error, we affirm.
FACTS
¶ 2. Janice and J. Wesley Cooper were married on February 27, 1998.[2] On the morning of the wedding, the couple entered into an antenuptial agreement which provided in pertinent part:
It is the intention of each of the parties hereto that each party waives, releases, and relinquishes any right or claim of any kind, character or nature whatsover, which either may have or shall have in and to the estate, property, assets, or effects of the other, including but not limited to each party’s Separate Property set forth herein, under any present or future law of this State except as otherwise specifically provided in this agreement; and each of the parties hereto agrees to refrain from any action or proceeding that may tend to void or nullify to any extent or in any particular the terms of any such Will of the other; and forever waives, releases, and relinquishes any right or claim which he or she now has or may have or shall have, pursuant to the provisions of the laws of the State of Mississippi, as said laws may exist now or hereafter, to elect to take in contravention of the terms of any Will of the other, including any Last Will now executed or which may be executed hereafter, or any disposition of property made by the other during his or her lifetime.
¶ 3. Sometime during the marriage, the couple separated; and on December 13, 2007, Wesley executed a new will that devised all of his property to his daughters, Carolyn and Deborah. Then, on August 7, 2008, Wesley executed a deed, conveying ownership of his home to Carolyn and Deborah. Shortly thereafter, Wesley died.
¶ 4. Following Wesley’s death, Carolyn filed a petition to probate Wesley’s will in the Adams County Chancery Court. The chancellor entered a judgment admitting the will to probate and ordered the issuance of the letters testamentary to Carolyn. Janice then filed a petition contesting the will, wherein she claimed, among other things, that Wesley’s will was the result of Carolyn and Deborah’s undue influence and was executed by Wesley at a time when he was of unsound mind. Carolyn responded by seeking a dismissal of Janice’s petition for will contest due to a no-contest provision in the antenuptial agree *1106 ment signed by Janice and Wesley on February 27,1998, and requesting that because Janice had waived all of her homestead rights in the home upon entering into the antenuptial agreement, the home be sold and the proceeds be divided as follows: one-half to Janice, one-fourth to Carolyn, and one-fourth to Deborah. Janice then filed a “Renunciation of Will,” a “Motion to Void Deed of Gift,” and a motion to strike the antenuptial agreement.
¶ 5. Carolyn then moved for summary judgment, requesting that the chancellor dismiss the will contest petition, the renunciation of the will, and the motion to void the deed with prejudice because no issue of disputed material fact existed. After a hearing on the motion, the chancellor entered an order granting summary judgment in favor of Carolyn. Janice then filed a motion to set aside the summary judgment. After a hearing, the chancellor denied the motion. Janice now appeals.
STANDARD OF REVIEW
¶ 6. When considering a lower court’s grant or denial of summary judgment, this Court employs a de novo standard of review and examines all of the evidentiary matters before it, including admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. Lawrence v. Lawrence, 956 So.2d 251, 255 (¶ 11) (Miss.Ct.App.2006) (citing McMillan v. Rodriguez, 823 So.2d 1173, 1176-77 (¶ 9) (Miss.2002)). “The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact, and the moving party is enti-tied to judgment as a matter of law, summary judgment should forthwith be entered in his or her favor.” Id. at 255-56 (¶ 11) (internal citation omitted). If one party swears to one version of the matter at issue and another claims the opposite, then issues of fact exist sufficient to require denial of a motion for summary judgment. Id. at 256 (¶ 11).
DISCUSSION
¶ 7. Janice argues that the chancellor erred in granting summary judgment in favor of Carolyn after finding that the antenuptial agreement was a valid and enforceable contract which precluded her challenge of the will and deed executed by Wesley. Janice asserts that the antenup-tial agreement is procedurally unconscionable since the facts are clear that she entered into the antenuptial agreement while under duress and without the benefit of or opportunity to obtain proper legal counsel.[3] Janice also alleges that the ante-nuptial agreement fails as substantively unconscionable because the agreement constitutes an invalid contract of adhesion drafted unilaterally by Wesley, the dominant party, and then presented to her, the weaker party, on a “take-it-or-leave-it” basis without a real opportunity to bargain about its terms. See East Ford, Inc. v. Taylor, 826 So.2d 709, 716 (¶ 20) (Miss.2002). Janice further contends that even if the document is found to be a valid and enforceable agreement, this Court should hold that such no-contest provisions in antenuptial agreements are void as against public policy or, alternatively, face heightened scrutiny.
*1107 ¶ 8. In response, Carolyn argues that Janice voluntarily entered into a clear and unambiguous antenuptial agreement that included a no-contest provision, which prevented her from contesting or renouncing Wesley’s will, and it prevented her from challenging any disposition of property executed by Wesley during his lifetime. Carolyn contends that the antenuptial agreement was not procedurally unconscionable since Janice and Wesley had discussed Wesley’s intentions of entering into an antenuptial agreement prior to the day that the couple entered into the agreement, and Janice provided Wesley with information regarding her financial assets and debts to include in the drafting of the agreement prior to their wedding day. Further, Carolyn claims that, even though Janice possessed separate counsel at the time that she entered into the agreement, there is no requirement that parties be represented by independent counsel in order to have a valid antenuptial agreement. See Mabus v. Mabus, 890 So.2d 806, 821 (¶ 63) (Miss.2003); Ware v. Ware, 7 So.3d 271, 277 (¶ 20) (Miss.Ct.App.2008). Carolyn also contends that Janice is bound by the contents of the antenuptial agreement, regardless of Janice’s claim to the contrary that she did not read the agreement. See Ware, 7 So.3d at 277 (¶ 20) (quoting Oaks v. Sellers, 953 So.2d 1077, 1082 (¶17) (Miss.2007) (“[A] person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract.”)).
¶ 9. This Court has held on several occasions that “[a]n antenuptial agreement is enforceable just as any other contract.” Long v. Long, 928 So.2d 1001, 1003 (¶ 13) (Miss.Ct.App.2006) (citing Mabus, 890 So.2d at 818 (¶ 53)). The law requires antenuptial agreements to be fair in the execution, and the law imposes a duty of disclosure upon the parties entering into these agreements. Id. (citing Smith v. Smith, 656 So.2d 1143, 1147 (Miss.1995)). However, “[i]t is not now and never has been the function of this Court to relieve a party to a freely negotiated contract of the burdens of a provision which becomes more onerous than had originally been anticipated.” Estate of Hensley v. Estate of Hensley, 524 So.2d 325, 328 (Miss.1988) (quoting Transcon. Gas v. State Oil and Gas Bd., 457 So.2d 1298, 1322 (Miss.1984), reversed on other grounds, 474 U.S. 409, 106 S.Ct. 709, 88 L.Ed.2d 732 (1986)). Furthermore, this Court notes that the right to contest a will may be contracted away, as long as the terms of the contract are clear as to its purpose and intent, and sufficient consideration is present. Robert Weems, Mississippi Practice Series: Wills and Administration of Estates in Mississippi § 8:22 (3rd ed. 2003). See Power v. Scott, 837 So.2d 202, 206 (¶ 11) (Miss.Ct.App.2002) (finding that the testator’s ex-husband who had entered into a property-settlement agreement wherein each spouse waived and relinquished any right to receive a share of the other’s estate did not meet the definition of an “interested party” so as to be able to contest the testator’s will).
¶ 10. The record contains the transcript from the hearing on Janice’s motion to set aside the summary judgment. In denying Janice’s motion, the chancellor found as follows:
I cannot find where there was anything procedurally wrong with the [ajntenup-tial [ajgreement. It was certainly voluntarily signed. I heard nothing to indicate that she was forced in any way to sign it and, in fact[,] ... there is an attachment that lists her assets that was attached to [the antenuptial agreement] so certainly that information was done prior to, because it was typed in, and *1108 ... that information was provided by her prior to the date the agreement was signed.... It’s undisputed that she signed the agreement. It’s undisputed that she stated in her testimony ... that Mr. Ogden, although he was not a person that she picked herself, I believe [that in] the deposition testimony!,] Mr. Lewis asked her did Mr. Ogden answer every question that she had and she indicated that yes, he did answer every question that she had and I can understand what she’s saying now, that there was a rushed situation, that she did not have an opportunity really to understand what it all meant and so, therefore, I assume she did [not] necessarily have the opportunity to think of every conceivable question that maybe she should have thought of[,] but the fact remains that knowing all of that[,] she did ask some questions apparently and I guess those questions were answered and at the conclusion she initialed a couple of places in the document and signed it. There is nothing before the Court to indicate that it was not voluntary. ... There is nothing before the Court to indicate that it was unconscionable in any way and the fact remains that this was signed in 1998 and apparently, according to the pleadings, according to her sworn deposition testimony, that the first time anything ever came up in Court in regards to [Janice] expressing some problem or concern with the [a]greement is once the estate was opened and she filed some pleadings at that time indicating that she should not be held to the [a]greement[,] but from a legal standpoint[,] the Court has no choice ... but to find that it was a valid [a]ntenuptial [a]greement, that there was nothing procedurally wrong with the execution of it.
¶ 11. Upon a thorough review of the record, no genuine issue of material fact exists as to Janice’s claims that the ante-nuptial agreement was both procedurally and substantively unconscionable, or that she had entered into the agreement involuntarily. The record reveals, contrary to Janice’s claims, that Janice voluntarily entered into an unambiguous, binding ante-nuptial agreement where she waived, released, and relinquished any right or claim to Wesley’s estate and waived the right to take in contravention of the terms of Wesley’s will or any other disposition of property made by Wesley during his lifetime. Therefore, we affirm the chancellor’s order of summary judgment in favor of Carolyn. This issue lacks merit.
¶ 12. THE JUDGMENT OF THE ADAMS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. BARNES AND RUSSELL, JJ., NOT PARTICIPATING.

. Carolyn brings this suit individually and as executrix of the estate at issue.

. At the time of the marriage and thereafter, Wesley had two daughters from a prior marriage, Carolyn and Deborah Lynn Cooper Hill.

. Specifically, Janice alleges that on the morning of her wedding day, she and Wesley went to his lawyer’s office where she was presented with an eleven-page document entitled "Antenuptial Agreement.” Janice argues that she did not have time to read the entire document, as she only had fifteen minutes to sign the agreement due to her being anxious about getting married that afternoon. Janice further claims that while she did have a separate attorney in the office that answered her questions, he did not go over the document's provisions with her, and she did not receive a bill from him for his services.