GRIFFIS, P.J.,
for the Court:
¶ 1. This appeal considers the divorce of Willie and Jeanell McLeod. Willie challenges the chancellor’s decision that found the prenuptial agreement invalid and the division of assets. We find reversible error and remand for further proceedings consistent with this opinion.
FACTS
¶ 2. Willie and Jeanell were married on March 27, 2001. They each had children from a prior relationship. There were no children born of their marriage; but Jea-nell had a son with her paramour in 2011.
¶ 3. On the day of their marriage, before the vows were exchanged, Willie and Jeanell signed a prenuptial agreement. The agreement was prepared by Willie’s attorney, Mark Knighten. The agreement provided that both parties would retain their separate property if they divorced. At the time, Willie had several valuable assets. Jeanell’s assets were limited to her furniture and a vehicle.
¶ 4. During their marriage, Willie and Jeanell maintained separate finances and checking accounts. Jeanell testified that they split the bills and both paid for their “own stuff.” They reimbursed each other for big household items and took turns buying dinner and clothing. When they traveled, Willie bought his plane ticket and Jeanell bought her ticket. They would each pay for the expenses of their respective children.
¶ 5. On January 7, 2008, Jeanell filed for divorce on the ground of habitual cruel and inhuman treatment. They later reconciled. Then, on April 11, 2008, Willie filed for divorce on the ground of adultery. The chancellor consolidated these cases.
¶ 6. Jeanell filed a motion for a declaratory judgment. She claimed that the prenuptial agreement was void and unenforceable because:
[T]he agreement presented to [Jeanell] is signed by the parties but is not notarized;
the agreement does not contain the full financial disclosures of the parties as Exhibits which are referenced in the body of the document presented in the course of this litigation;
[Jeanell] was not given the opportunity to review the Agreement with her own counsel prior to entering into the Agreement as the agreement was drafted and allegedly signed the same date as the marriage of the parties;
[Willie] has accumulated substantial assets during the marriage with the help and assistance of [Jeanell] and is attempting to use an invalid [prenuptial] agreement to preclude an appropriate and equitable division of marital assets.
¶ 7. On October 15, 2009, the chancellor issued an order that found that the agreement was invalid. The chancellor determined that there was clear and convincing evidence that Willie fraudulently induced Jeanell to execute the agreement. Willie then timely filed a motion to set aside, alter, or amend the judgment under Mississippi Rule of Civil Procedure 59. In the motion, Willie claimed that it was error to find fraud in the inducement since fraud *1249 was never raised. On April 21, 2010, the chancellor executed an order that stated: “Willie is correct, as this court may not sua sponte raise the affirmative defense of fraud and base a portion of the finding on this basis.” The order found that the original finding of the court of fraud in the inducement was erroneous as a matter of law. The chancellor found that because fraud in the inducement was never pled, it was waived. However, the chancellor still found the agreement to be invalid and unconscionable.
¶ 8. The trial was held in October 2010. The chancellor granted Willie a divorce on the ground of adultery and entered a judgment that divided the marital estate. Willie then filed a motion to set aside the judgment under Rule 59. By order dated September 11, 2012, the chancellor granted Willie’s motion and revised parts of the judgment that divided the marital estate. The chancellor found that Willie’s motion had merit insofar as the mathematical calculations were concerned, but the division of the marital estate remained undisturbed. It is from this judgment that Willie now appeals.
STANDARD OF REVIEW
¶ 9. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) (Miss.2002).
ANALYSIS

I. Failure to Enforce the Prenuptial Agreement

¶ 10. Willie argues that the chancellor erred when he found the agreement to be invalid. Willie alleges that the chancellor’s findings were not supported by substantial credible evidence.
¶ 11. The Mississippi Supreme Court has held that prenuptial agreements must be fair in the execution, and a duty of disclosure shall be imposed. Smith v. Smith, 656 So.2d 1143, 1147 (Miss.1995) (citing Hensley v. Hensley, 524 So.2d 325, 327 (Miss.1988)).
¶ 12. Prenuptial agreements are enforced like contracts: the first rule of interpretation of contracts is to follow the intent of the parties. Long v. Long, 928 So.2d 1001, 1003 (¶ 14) (Miss.Ct.App.2006). This intent was recognized initially by the prenuptial agreement, which provided:
Each of the parties shall retain all rights in his or her own separate property, as hereinafter defined, whether now owned at the time of the marriage of the parties or acquired thereafter, and each of them shall have the absolute and unrestricted right to dispose of such property during his or her lifetime and upon his or death, free from any claim which may be made by the other by reason of their marriage, and with the same effect as if no marriage had occurred between them, and such separate property shall not be subject to any division between the parties ... as marital property subject to equitable distribution or division under the.laws of Mississippi....
¶ 13. “A contract may be either procedurally or substantively unconscionable.” West v. West, 891 So.2d 203, 213 (¶ 26) (Miss.2004). Procedural uncon-scionability deals with the formation of the contract. Id. (citing East Ford, Inc. v. Taylor, 826 So.2d 709, 714 (Miss.2002)). Substantive unconscionability is apparent “when the terms of the agreement are so one-sided that no one in his right mind would agree to its terms.” Id. (citing In re Last Will & Testament of Johnson, 351 So.2d 1339, 1341 (Miss.1977)).
*1250 ¶ 14. The chancellor found that Jeanell did not voluntarily enter into the agreement, that there was no full or fair disclosure of assets, that fairness in the execution of the agreement was lacking, and that it was unconscionable. We will address each finding separately.

A. Voluntariness

 ¶ 15. Each party must enter a prenuptial agreement voluntarily. Deborah H. Bell, Bell on Mississippi Family Law § 23.02[2] (2nd ed. 2011). In In re Last Will & Testament of Cooper, 75 So.3d 1104, 1108 (¶ 11) (Miss.Ct.App.2011), this Court affirmed the chancellor’s judgment and found that there was no evidence to support a claim of involuntariness, because neither party was “forced in any way to sign” the prenuptial agreement.
¶ 16. This Court has held that “it is well established that ‘a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract.’ ” Ware v. Ware, 7 So.3d 271, 277 (¶ 20) (Miss.Ct.App.2008) (quoting Oaks v. Sellers, 953 So.2d 1077, 1082 (¶ 17) (Miss.2007)). And, as this Court has stated, “it is not now and never has been the function of this Court to relieve a party to a freely negotiated contract of the burdens of a provision which becomes more onerous than had originally been anticipated.” In re Cooper, 75 So.3d at 1107 (¶ 9).
¶ 17. According to the evidence, Willie and Jeanell started to discuss marriage towards the end of 2000, after they had dated for two years. Willie testified that he wanted a prenuptial agreement to protect his assets. Both Willie and Jeanell testified that Jeanell wanted to make sure that in the event someone died, she and her children would be protected. Jeanell knew that Willie would not marry her if they did not execute a prenuptial agreement.
¶ 18. The evidence indicated that Jea-nell discussed the agreement with Knight-en weeks before it was executed. Specifically, at the hearing, a bill was introduced into evidence that showed that Jeanell had discussed the agreement with Knighten. Jeanell and Willie discussed what she wanted and did not want included in the agreement. Before the final agreement was executed, Willie presented drafts of agreements to Jeanell. Both Willie and Jeanell signed the final agreement. There was no credible evidence to support the finding that Jeanell did not enter into the agreement voluntarily.

B. Full and Fair Disclosure

¶ 19. Willie argues that there was full disclosure of assets and that there is no legal necessity that a financial disclosure be attached to a prenuptial agreement. Jeanell has maintained that because the agreement does not contain a full financial disclosure, it is invalid.
¶ 20. Initially, the chancellor found that there was a full disclosure of assets. At the hearing, the chancellor stated:
[Cjertainly by having lived with him for a year to two and a half years, whatever it was, ... prior to the marriage, and her working in his office and her being involved as much as she was, and, of course, one of the exhibits, a voluminous one, in which all of those records were dug out of his storage, showing her signing checks and being aware of the business activities over an extended period of time, she certainly knew. If she doesn’t know of all of his properties, she had a real good idea of them. She knew about most of them. She knew about, you know, basically what kind of lifestyle he had. She knew what kind of business investments, she knew his work habits.
*1251 And I think that he was probably a very hard worker during that time. She knew all of that.
And so I would say that there was, in fact, financial disclosure. So I’m not going to need any further argument with regard to voluntariness, or full and fair disclosure....
However, in his final order, the chancellor found that while Jeanell had some knowledge of Willie’s affairs, she did not have full disclosure of assets at the time the agreement was executed.
¶ 21. Willie contends that the chancellor erred when he found that there was not full and fair disclosure of assets. While disclosure is of “paramount importance,” this Court has found that a prenuptial agreement can still be valid even if a financial disclosure is not attached. Mabus v. Mabus, 890 So.2d 806, 819-21 (¶¶ 58, 59, 64) (Miss.2003).
¶ 22. Here, the agreement stated that a full disclosure was made. Specifically, it provided:
[Willie] hereby states: that he has been fully informed regarding the property and estate of [Jeanell] and has examined the statement of her assets set forth in Exhibit “A” annexed hereto prior to signing this Agreement....
[Jeanell] hereby states: that she has been fully informed regarding the property and estate of [Willie] and has examine the statement of his assets set forth in Exhibit “B” annexed hereto prior to signing this agreement.
¶ 28. Jeanell executed the agreement, and in doing so, asserted that she was fully informed regarding Willie’s property. And the facts presented at the hearing support her knowledge of Willie’s assets. She managed his business, including some of his rental property, and she took records to Willie’s accountant for tax-return purposes. In addition, Jeanell has not presented any evidence that would show fraud or misrepresentation on Willie’s part. See Kitchens v. Estate of Kitchens, 850 So.2d 215, 217 (¶ 5) (Miss.Ct.App.2003) (citing Simeone v. Simeone, 525 Pa. 392, 581 A.2d 162 (1990)). There was no credible evidence to support the finding that there was no full or fair disclosure of assets.

C. Fairness in the Execution

¶ 24. Prenuptial agreements “must be fair ‘in the execution’ or procedurally fair.” Bell, at § 23.02[5] (citing Mabus, 890 So.2d at 821; Smith, 656 So.2d at 1147). Fairness in the execution can be affected by the presence of individual counsel, whether the parties had time to review the agreement, education of the parties, and whether the agreement was explained. Id.
¶ 25. Jeanell argued that the prenuptial agreement was invalid because she did not have the opportunity to consult independent counsel, nor did she have an opportunity to review the agreement in its entirety before she signed it. The chancellor agreed and further found that Jeanell had little education.
¶ 26. This Court in Ware, 7 So.3d at 277 (¶ 20), found that there was no evidence to suggest that one of the parties was forced to sign the prenuptial agreement, although one party admitted that she did not read the contract nor take it to an attorney to review it before she signed it. This Court held that “it is well established that ‘a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract.’ ” Id. (quoting Oaks, 953 So.2d at 1082 (¶ 17)). Additionally, “independent counsel is not required to fairly execute a prenuptial agreement.” *1252 Id. (quoting Mabus, 890 So.2d at 821 (¶ 63)).
¶ 27. According to the evidence, Jeanell communicated with Knighten over the course of a few weeks about the prenuptial agreement. While she did not retain her own attorney, she had the opportunity to do so. When she signed the prenuptial agreement, Jeanell asserted that she understood the terms of it. Additionally, Jeanell negotiated the prenuptial agreement with Willie for weeks before she signed it. Thus, we find that there was fairness in the execution of the agreement.

D. Substantive Unconscionability

¶ 28. The chancellor found that Jeanell had no “meaningful choice” at the time of the execution of the agreement and that the terms of it were wholly unfavorable to her.
¶ 29. Substantive unconscionability is apparent “when the terms of the agreement are so one-sided that no one in his right mind would agree to its terms.” West, 891 So.2d at 213 (¶ 26) (citing In re Johnson, 351 So.2d at 1341). The Mississippi Supreme Court has defined an unconscionable contract as “one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other.” In re Johnson, 351 So.2d at 1341 (quoting Terre Haute Cooperage, Inc. v. Branscome, 203 Miss. 493, 503, 35 So.2d 537, 541 (1948)).
¶ 30. Two clauses were included in the agreement that provided what would happen if one of the parties died:
Upon the death of either party during their marriage, with the other Party surviving, the Parties agree that all property which is joint tenancy with right of survivorship property or surviv-orship marital property shall pass to the surviving party by right of survivorship. Both parties agree that a Will of the estates and properties will be executed at a later date that will outline estates, beneficiaries, survivorship, and or any other grounds not covered by this agreement.
¶ 31. In his order, the chancellor stated: Under the prenuptial agreement, Jeanell was entitled to only that which Willie promised he would leave her in his Last Will and Testament, whenever he decided to have that document prepared. No specifics regarding what he intended to leave her in order to provide for her as she had requested were provided and are purely speculative. As written, this provision is inequitable and unenforceable and does nothing to provide for Jea-nell at the time of a divorce or at the time of his death. On the other hand, under the laws in Mississippi, without a prenuptial Jeanell would be entitled to an equitable share of the marital estate at the time of divorce.
... As such the court finds that the prenuptial agreement “... was such an agreement that no wife in her senses and not under a delusion would agree to and no fair-minded husband would propose.”
¶ 32. In Crisler v. Crisler, 963 So.2d 1248,1252-53 (¶ 9) (Miss.Ct.App.2007), this Court stated:
[P]arties are bound by what they promise in writing. But, we are not bound to adopt a construction not compelled by the instrument in which we would have to believe no man in his right mind would have agreed to. A construction leading to an absurd, harsh or unreasonable result in a contract should be avoided, unless the terms are express and free of doubt.
(Citing Frazier v. Ne. Miss. Shopping Ctr., 458 So.2d 1051, 1054 (Miss.1984)). Fur *1253 ther, in Hensley, the court stated: “[I]t is not now and never has been the function of this Court to relieve a party to a freely negotiated contract of the burdens of a provision which becomes more onerous than had originally been anticipated.” Hensley, 524 So.2d at 328.
¶ 33. Based on the evidence, by executing the agreement, Jeanell acknowledged that she knew the terms she was signing and that she understood that in the event of divorce, she would leave with the few assets she brought into the marriage. The fact that Willie did not execute a Last Will and Testament to provide for Jeanell is not before this Court today, because neither Willie nor Jeanell died during their marriage. This situation involves a divorce, not a death. By signing the agreement, Jeanell acknowledged that she knew that if she and Willie divorced, she relinquished any potential claims to Willie’s property. Therefore, we find that there was no credible evidence to support the finding that the agreement was unconscionable.
¶ 34. Based on these findings, we hold that the chancellor was manifestly wrong when he found that Jeanell did not enter into the agreement voluntarily, that there was no full or fair disclosure of assets, that fairness in the execution was lacking, and that the agreement was unconscionable. Accordingly, the chancellor’s decision is reversed, and this case is remanded for the chancellor to enforce the parties’ agreement in the dissolution of their marriage.

II. Distribution of the Marital Assets and Liabilities

¶ 35. Willie argues that the chancellor erred when he divided the assets and liabilities of the marriage. Willie asserts that the chancellor’s final order did not fix some errors from the chancellor’s previous divisions and that the chancellor created additional errors. The chancellor’s findings were subsequent to his ruling that the prenuptial agreement was invalid. Thus, he considered all property.
¶ 36. A chancellor is required to make findings of fact regarding all applicable Ferguson factors. Pelton v. Pelton, 119 So.3d 1161, 1163 (¶ 11) (Miss.Ct.App.2013) (citing Kilpatrick v. Kilpatrick, 732 So.2d 876, 880 (¶ 15) (Miss.1999); Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994)).
¶ 37. In Johnson v. Johnson, 650 So.2d 1281,1287 (Miss.1994), the court outlined the process that a chancellor must follow to apply the Ferguson factors. First, the chancellor should classify the parties’ assets as marital or nonmarital based on Hemsley v. Hemsley, 639 So.2d 909, 914, 915 (Miss.1994). Johnson, 650 So.2d at 1287. Next, the chancellor must value and equitably divide the assets. Id. Then, after equitable division and in light of the parties’ nonmarital assets, and only if the marital assets will leave one party in a deficit, the chancellor should consider an award of alimony. Id.
¶ 38. In Lauro v. Lauro, 847 So.2d 843, 850 (¶ 17) (Miss.2003), the Mississippi Supreme Court determined that since the case was remanded for further consideration of equitable division, the chancellor should be instructed “to revisit the awards of alimony and child support after he has properly classified and divided the marital assets.” Here, since this case has been remanded for the chancellor to dissolve the parties’ marriage consistent with the terms of the prenuptial agreement, on remand the chancellor will have all the tools of marital dissolution available.
¶ 39. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH
*1254 THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.